# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) LOT MAINTENANCE OF OKLAHOMA, INC., <br><br> Plaintiff, <br><br> v. <br><br> (1) TULSA METROPOLITAN UTILITY AUTHORITY, <br><br> Defendant. | Case No. _____ |

## COMPLAINT

Plaintiff, Lot Maintenance of Oklahoma, Inc. ("Lot Maintenance"), alleges as follows:

## NATURE OF ACTION

1. Plaintiff Lot Maintenance brings this action for injunctive and declaratory relief and damages against Defendant Tulsa Metropolitan Utility Authority ("TMUA").

## JURISDICTION AND VENUE

2. This Court has federal question jurisdiction over this matter under U.S.C. § 1331 because Defendant's actions violated the Fourteenth Amendment of the United States Constitution's Equal Protection Clause. Further, the Court may issue declaratory relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02.

3. Venue is appropriate in this district under 28 U.S.C. § 1391 because Defendant resides here and a substantial portion of the events or omissions giving rise to these claims occurred here.

{1186850;2}

## PARTIES

4. Plaintiff Lot Maintenance is an Oklahoma corporation with its principal place of business in Tulsa, Oklahoma.

5. Defendant TMUA is an Oklahoma public trust established under Oklahoma law for the purpose of operating the water supply for the express benefit of the City of Tulsa, as beneficiary of the trust.

## FACTUAL ALLEGATIONS

6. The City of Tulsa has maintained a minority and female owned business enterprise ("M/FBE") program since 1988.

7. In 2007, the City of Tulsa M/FBE program was modified into the Building Resources in Developing and Growing Enterprises program (BRIDGE). The BRIDGE program did not include race-based set-asides or bid preferences.

8. In 2008, the City of Tulsa retained MGT of America, Inc. to conduct a M/FBE disparity study to determine whether there was a compelling interest in establishing a narrowly-tailored race conscious M/FBE program.

### *The 2010 City of Tulsa Business Disparity Study*

9. In 2010, the City of Tulsa Business Disparity Study ("Disparity Study") was completed, and MGT of America, Inc. recommended nine purportedly race neutral reforms and eight race conscious reforms.

10. The Disparity Study purported to find evidence showing a compelling governmental interest in conducting some race conscious city contracting to remedy specific disparities in current M/FBE utilization.

11. The Disparity Study recommended that a prime contractor be required to exercise good faith efforts to utilize M/FBE subcontractors and documentation of such efforts.

12. The Disparity Study recommended the City of Tulsa "closely monitor the utilization of all businesses by race, ethnicity, and gender," including considering a database to track "ethnicity data."

### *City of Tulsa Adopts M/FBE Utilization Contract Requirements.*

13. In 2010, the City of Tulsa created a Business Disparity Study Task Force Committee. The Task Force met approximately weekly from July 2010 through August 2011.

14. On October 28, 2010, the City of Tulsa revised Tulsa Revised Ordinances, Title 5, Section 110 to bar all city contractor bid proposals that did not "utilize, or make good-faith efforts to utilize, minority business enterprises (MBE), female business enterprises (FBE) and other disadvantaged businesses."

15. On October 28, 2010, the City of Tulsa amended Tulsa Revised Ordinances, Title 5, Section 110 to add a requirement that city contractors demonstrate a "good faith effort" to "achieve an MBE, FBE or other disadvantaged business goal."

16. The following terms are defined by Tulsa City Ordinances:

> a. "Minority/female business enterprise (M/FBE)" means "minority business enterprises or female/women business enterprises as defined herein, who have been certified to do business with the City of Tulsa." City of Tulsa Code of Ordinances, Title 5, Chap. 1, §101(H).

 b. "Female/women business enterprise (FBE)" means "a small business concern, defined pursuant to Section 3 of the Small Business Act and implementing regulations, which is owned and controlled by one (1) or more women." City of Tulsa Code of Ordinances, Title 5, Chap. 1, §110(A)(5).

 c. "Minority business enterprise (MBE)" means "those individuals engaged in an enterprise who are citizens of the United States (or lawfully admitted permanent residents) and who are Black Americans, Hispanic Americans, Native Americans, Asian-Pacific Americans or Asian-Indian Americans or any other minorities or individual found to be disadvantaged by the Small Business Administration pursuant to Section 8(a) of the Small Business Act, as amended, 15 U.S.C. § 637(a)." City of Tulsa Code of Ordinances, Title 5, Chap. 1, §110(A)(7).

***TMUA's Sanitary Sewer Cleaning Project Adopted City of Tulsa's M/FBE Utilization Contract Requirements.***

17. On July 12, 2013, Lot Maintenance bid for TMUA's Project No. TMUA ES-2014-WC1 "Cleaning Of Sanitary Sewer System Located In Various Areas of the City" ("Project" or "the Project").

18. The Notice to Bidders included Instruction to Bidder No. B-16, requiring "Each bidder agrees to comply with the terms of Title 5, Chapter 1, Sections 110, of the Tulsa Revised Ordinances relating to Non-Discrimination."

19. The Notice to Bidders included a copy of City of Tulsa Resolution No. 18109, which reads in part:

- "In furtherance of the City's commitment to said policy, utilization goals of minority/female business enterprises are hereby established;"

- "That each bid shall be accompanied by a sworn statement setting forth the bidder's goals and timetables for utilization of minorities and females in laboring or trade classes and proposed utilization of minority/female business enterprises approved by the Department of Human Rights;"

{1186850;2}        4

- "The failure to submit the documents required… shall render a bid unresponsive."

20. The Notice to Bidders included a copy of City of Tulsa's 12-page Utilization Instructions, which reads in part:

- "The stated objectives of the programs are… To ensure that only firms that fully meet the eligibility standards are permitted to participate as BRIDGE.DBE and/or M/FBE participants;"

- "The City of Tulsa's goal is to mitigate and close the disparity between the availability/capability versus actual utilization of BRIDGE.DBE and M/FBE firms;"

- "The aspirational project goals will be monitored and periodically adjusted to address the disparity between the available / capable / willing BRIDGE.DBE and M/FBE firms versus actual utilization of BRIDGE.DBE and M/FBE firms. The ***overall aspirational, project goal is between 6% and 10%***;"

- "When the City has established BRIDGE.DBE and/or M/FBE aspirational, contract goals, the City will award a contract only to a bidder who makes good faith efforts to meet the goals;"

- "All bidders shall, with the submissions of their bids, show their intent to meet or exceed the BRIDGE.DBE and/or M/FBE goals established for the project. Failure to make the written assurance… or failure to demonstrate good faith efforts that is deemed acceptable to the City… shall render a bid non-responsive;"

- "To demonstrate good faith efforts to meet the BRIDGE.DBE and/or M/FBE goals, the bidders shall document their efforts to obtain BRIDGE.DBE and/or M/FBE participation. City will review and determine that the information is complete, accurate and adequately documents the bidder's good faith efforts before committing to the award of the contract to the bidder."

21. Lot Maintenance agreed to abide by City of Tulsa's good faith effort requirement.

### *Lot Maintenance Made Substantial Efforts To Comply With City Of Tulsa's M/FBE Utilization Contract Requirements.*

22. Lot Maintenance solicited advice concerning the new BRIDGE.DBE and M/FBE forms and requirements from Ms. Debra Carr, a City of Tulsa Water and Sewer Department employee, and Mr. Jesse Morrow, a City of Tulsa Human Rights Department employee.

23. Based on the advice received, Lot Maintenance consulted a list of certified subcontractors and found none that appeared qualified to work on the Project.

24. Lot Maintenance considered using Elite Root Control, but determined they were not qualified because they were not certified under the Pipeline Assessment and Certification Program ("PACP").

25. Lot Maintenance contacted several of their current vendors to learn if they were designated BRIDGE.DBE or M/FBE.

26. Ultimately, Lot Maintenance identified no M/FBE subcontractors to be utilized on its bid, stating: "In our line of work we do not use subcontractors because we feel we can provide the best service possible. The few supplies/suppliers we do use are not Bridge.DBE and/or M/FBE."

27. Lot Maintenance did not include documentation of their solicitation efforts in their bid materials.

### *Lot Maintenance's Bid Was Deemed Non-Responsive For Not Complying With City of Tulsa's M/FBE Utilization Contract Requirements.*

28. Lot Maintenance proposed to accomplish the Project for $984,930.00.

29. Ace Pipe Cleaning, Inc. ("Ace Pipe") submitted the only other bid for the Project.

30. Ace Pipe proposed to accomplish the Project for $1,073,860.00.

31. Lot Maintenance submitted the lowest bid for the Project.

32. On July 17, 2013, Ms. Carr sent an "Award Letter" to Lot Maintenance, informing Lot Maintenance that it was the low bidder and enclosing contract documents.

33. After Ace Pipe made some calls and complaints, City of Tulsa staff scrutinized Lot Maintenance's documentation more closely.

34. On August 1, 2013, before the completed documents were due back, Ms. Carr notified Lot Maintenance to hold off returning the documents due to potential issues related to BRIDGE.DBE and/or M/FBE utilization requirements.

35. On August 19, 2013, Ms. Priscilla Brown of the City of Tulsa Engineering Services Department gave Lot Maintenance oral notification that its bid was being recommended as nonresponsive due to failure to comply with BRIDGE.DBE and/or M/FBE utilization requirements.

36. Lot Maintenance sought administrative reconsideration.

37. On September 12, 2013, Assistant City Attorney Teresa S. Nowlin sent Lot Maintenance a letter determining: "Lot Maintenance's bid on the above-described project does not meet the City of Tulsa's requirements regarding demonstration of good faith efforts to achieve BRIDGE.DBE and/or M/FBE utilization."

38. If not for the City of Tulsa race conscious affirmative action program, TMUA would have awarded the Project to Lot Maintenance as low bidder.

## OKLAHOMA CONSTITUTIONAL VIOLATION

39. On November 6, 2012, Oklahoma voters passed State Question 759 ("Oklahoma Civil Rights Initiative"), which reads, in part:

> The state shall not grant preferential treatment to, or discriminate against, any individual or group on the basis of race, color, sex, ethnicity or national origin in the operation of public employment, public education or public contracting

Okla. Const. art. II, § 36A.

40. The Oklahoma Civil Rights Initiative barred Oklahoma governmental entities from enacting or administering any affirmative action programs that grant preferential treatment to or discriminate against any person based on race, sex, or ethnicity, even if those programs are permitted under the United States Constitution's Equal Protection Clause.

41. The City of Tulsa public contracting requirements grant preferential treatment to and discriminate against individuals and companies on the basis of race, color, sex, ethnicity, and/or national origin in violation of the Oklahoma Civil Rights Initiative.

42. The City of Tulsa's policy to "encourage the utilization of minority business enterprises and female business enterprises by persons who contract with the City" grants preferential treatment to and discriminates against individuals and companies on the basis of race, color, sex, ethnicity, and/or national origin in violation of the Oklahoma Civil Rights Initiative.

43. The City of Tulsa's BRIDGE.DBE and M/FBE denominations treat individuals and companies differently on the basis of race, color, sex, ethnicity, and/or national origin in violation of the Oklahoma Civil Rights Initiative.

44. The City of Tulsa's definition of MBE treats individuals and companies differently on the basis of race, color, sex, ethnicity, and/or national origin in violation of the Oklahoma Civil Rights Initiative.

45. The City of Tulsa's definition of FBE treats individuals and companies differently on the basis of race, color, sex, ethnicity, and/or national origin in violation of the Oklahoma Civil Rights Initiative.

46. Tulsa's Code of Ordinances Title 5, Chapter 1, Section 110 requires prime contractors to grant preferential treatment to and discriminate against individuals and companies on the basis of race, color, sex, ethnicity, and/or national origin in violation of the Oklahoma Civil Rights Initiative.

47. Tulsa's Code of Ordinances Title 5, Chapter 1, Section 110 violates Article II, §36A of the Oklahoma Constitution.

## EQUAL PROTECTION CLAUSE VIOLATION

48. The United States Constitution Equal Protection Clause provides:

> No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. Const. amend. XIV, §1.

49. By including and requiring compliance with Tulsa's Code of Ordinances Title 5, Chapter 1, Section 110, in its bid requirement Defendant has improperly classified individuals on the basis of race, sex, and ethnicity, depriving Plaintiff of its constitutional right to equal protection, in violation of 42 U.S.C. § 1983.

50. By defining MBEs and FBEs based on race, sex, and ethnicity, Defendant deprived Plaintiff of its constitutional right to equal protection, in violation of 42 U.S.C. § 1983.

51. By requiring Plaintiff to treat individuals and companies differently based on their race, sex, and ethnicity, Defendant deprived Plaintiff of its constitutional right to equal protection, in violation of 42 U.S.C. § 1983.

52. By conditioning the award of the Project on Plaintiff's treatment of individuals and companies differently based on their race, sex, and ethnicity, Defendant deprived Plaintiff of its constitutional right to equal protection, in violation of 42 U.S.C. § 1983.

## RELIEF SOUGHT

53. As a result of Defendant's unlawful actions, Plaintiff has suffered and will continue to suffer monetary and other damages.

54. Plaintiffs are suffering irreparable injuries as a result of Defendant's actions and these injuries will continue unless these acts are declared unlawful by this Court. If this Court does not grant injunctive relief, Plaintiff, and others, will continue to be denied contract awards, and will continue to be stigmatized by Defendant's use of racial, gender,

and ethnic classifications. These stigmatic harms cannot be remedied by monetary damages alone.

55. Plaintiff requests the Court enter a temporary and permanent injunction preventing Defendant TMUA from awarding the Project to any other bidder.

56. Plaintiff requests the Court declare that Tulsa's Code of Ordinances Title 5, Chapter 1, Section 110 violates Oklahoma's Constitution.

57. Plaintiff requests the Court declare that Tulsa's Code of Ordinances Title 5, Chapter 1, Section 110 violates the United States Constitution.

58. Plaintiff requests its bid on the Project be reinstated as responsive and the Project be awarded to Plaintiff as the low bidder.

59. In accordance with 42 U.S.C. §1988 and other federal statutes, Plaintiff is entitled to recover the cost and expenses of this lawsuit, including reasonable attorneys' fees.

Respectfully submitted,

s/Ronald N. Ricketts
Ronald N. Ricketts, OBA #7563
**GABLEGOTWALS**
1100 ONEOK Plaza
100 West Fifth Street
Tulsa, Oklahoma 74103-4217
(918) 595-4800
(918) 595-4990 (fax)
*rricketts@gablelaw.com*

Attorney for Plaintiff,
Lot Maintenance of Oklahoma, Inc.