UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LOT MAINTENANCE OF OKLAHOMA, INC., | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | )  Case No. 13-CV-0686-CVE-TLW ) |
| TULSA METROPOLITAN UTILITY AUTHORITY, | ) ) ) ) |
| Defendant. | ) |

## OPINION AND ORDER

Now before the Court is Defendant's Motion to Dismiss Based On the Lack of a Justiciable Controversy (Dkt. # 13). Defendant Tulsa Metropolitan Utility Authority (TMUA) argues that Lot Maintenance of Oklahoma, Inc. (Lot Maintenance) has not suffered an injury in fact, that Lot Maintenance's claim is not fairly traceable to the challenged ordinance, that Lot Maintenance's injury is not redressable, that prudential considerations caution against exercising standing, and that Lot Maintenance's claim is moot. Lot Maintenance has responded and objects to each of TMUA's contentions.

### I.

The City of Tulsa maintains a minority and female owned business enterprise (M/FBE) program. Dkt. # 2, at 2. In 2007, that program was modified into the Building Resources in Developing and Growing Enterprises program (BRIDGE.DBE). Id. In October 2010, the Tulsa Revised Ordinances were amended to require city contractors who submit bid proposals to make good-faith efforts to utilize female business enterprises (FBE), minority business enterprises (MBE), and other disadvantaged businesses. Id. at 3.

"TMUA is a trust whose primary responsibility is to manage Tulsa's water works and sanitary sewer systems." Dkt. # 13, at 1. In July 2013, Lot Maintenance submitted a bid for one of TMUA's projects, Project No. TMUA ES-2014-WC1, "Cleaning of Sanitary Sewer System Located in Various Areas of the City" (Project). Dkt. # 2, at 4. The notice to bidders for the Project required bidders to comply with Tulsa, Okla., Rev. Ordinances tit. 5, § 110, which requires city contractors to make a good faith effort to utilize M/FBEs and other disadvantaged businesses. Id. The notice also included a copy of City of Tulsa Resolution No. 18109 (1988), which established M/FBE utilization goals, created a requirement that bidders include a sworn statement describing the bidder's timetable and goals for the utilization of females and minorities and proposed utilization of M/FBEs, and declared that any bid that failed to include the required documents would be considered unresponsive. Id. at 4-5. Additionally, the notice included a copy of the City of Tulsa, Oklahoma Utilization Instructions, which established an overall aspirational project goal of actual utilization between 6% and 10%. Id. at 5; Dkt. # 19, at 16. The instructions stated that bidders who did not make good faith efforts to meet those goals would not be awarded contracts. Dkt. # 2, at 5. Lot Maintenance agreed to comply with the good faith effort requirement and alleges that it made substantial efforts to comply. Id. at 5-6.

Ultimately, Lot Maintenance did not identify in its bid any M/FBE subcontractors that it would utilize, and did not document any of its solicitation efforts in its bid materials. Id. at 6. Only two bids were submitted for the Project. Id. at 6-7. Lot Maintenance bid $984,930, while Ace Pipe Cleaning, Inc. bid $1,073,860. Id. Lot Maintenance was sent an award letter, which informed it that it was the low bidder and contained contract documents. Id. at 7. However, Lot Maintenance was later informed that its bid was being recommended as nonresponsive for failing to comply with

M/FBE utilization requirements and BRIDGE.DBE. Id.[1] Lot Maintenance alleges that, but for "the City of Tulsa race conscious affirmative action program," it would have been awarded the Project, as it was the low bidder. Id. A contract for the Project has yet to be awarded. Dkt. # 13, at 1.[2]

Lot Maintenance filed a complaint alleging that the City of Tulsa's policies, including BRIDGE.DBE and its implementing policies, and Tulsa, Okla., Rev. Ordinances tit. 5, § 1108,-- which have been incorporated into the bidding procedure for the Project--violate Okla. Const. art. II, § 36A[3] and the Equal Protection Clause of U.S. Const. amend. XIV, § 1. Id. at 8-10. Lot Maintenance seeks monetary, declarative, and injunctive relief. Id. at 10-11. Lot Maintenance seeks an injunction preventing TMUA from awarding the Project to another bidder, reinstating Lot Maintenance's bid, and awarding the Project to Lot Maintenance. Id. at 11. Lot Maintenance also requests that the Court declare that Tulsa, Okla., Rev. Ordinances tit. 5, § 1108 violates both Oklahoma's Constitution and the United States Constitution. Id. Additionally, Lot Maintenance appears to be requesting forward-looking injunctive relief that would prevent TMUA from applying the BRIDGE.DBE program to future bid solicitations. See id. at 10-11.

---

[1] Lot Maintenance states that it sought administrative reconsideration of that decision, but it is unclear whether any reconsideration took place (although Lot Maintenance does state that a City of Tulsa attorney later sent it a letter stating that its bid did not comply with the City's good faith effort requirements). See Dkt. # 2, at 7.

[2] After the filing of the complaint, TMUA rejected all bids for the Project and re-advertised the Project. Dkt. # 13-1, at 2.

[3] This section of the Oklahoma Constitution, approved by Oklahoma voters at the November 6, 2012, general election, prohibits the state from granting preferential treatment in public contracting to "any individual or group on the basis of race, color, sex, ethnicity or national origin." Okla. Const. art. II, § 36A. The Supreme Court has recently answered the question of "whether . . . voters in the States may choose to prohibit the consideration of racial preferences in governmental decisions" in the affirmative. Schuette v. Coal. to Defend Affirmative Action, Integration and Immigration Rights and Fight for Equal. by any Means Necessary (BAMN), No. 12-682, 2014 WL 1577512, at *8, *17, (U.S. Apr. 22, 2014) (plurality opinion).

TMUA has filed a motion to dismiss, arguing that Lot Maintenance's complaint lacks a justiciable controversy. Dkt. # 13. Lot Maintenance responded (Dkt. # 15), TMUA replied (Dkt. # 16), and Lot Maintenance filed a surreply (Dkt. # 19).

## II.

Federal courts are courts of limited jurisdiction and, as the party seeking to invoke federal jurisdiction, Lot Maintenance bears the burden of proving such jurisdiction is proper. See Southway v. Cent. Bank of Nigeria, 328 F.3d 1267, 1274 (10th Cir. 2003). A court lacking jurisdiction "cannot render judgment but must dismiss the case at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." Basso v. Utah Power & Light Co., 495 F.2d 906, 909 (10th Cir. 1974). Motions to dismiss under Fed. R. Civ. P. 12(b)(1) "generally take one of two forms. The moving party may (1) facially attack the complaint's allegations as to the existence of subject matter jurisdiction, or (2) go beyond allegations contained in the complaint by presenting evidence to challenge the factual basis upon which subject matter jurisdiction rests." Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell, 363 F.3d 1072, 1074 (10th Cir. 2004) (internal citation and quotations omitted). Here, TMUA has facially attacked the sufficiency of the complaint's allegations as to the existence of subject matter jurisdiction.[4] Where a motion to dismiss is based on a facial attack, courts "apply the same standards under Rule 12(b)(1) that are applicable to a Rule 12(b)(6) motion to dismiss for failure to state a cause of action." Muscogee (Creek) Nation v. Okla. Tax Comm'n, 611 F.3d 1222, 1227 n.1 (10th Cir. 2010).

---

[4] While TMUA's motion includes evidentiary materials not found in the pleadings (see Dkt. # 13-1), the evidentiary materials do not challenge any of the facts alleged in Lot Maintenance's complaint. Compare Dkt. # 13-1, with Dkt. # 2. Rather, the evidentiary materials suggest that Lot Maintenance's claim may be moot.

4

**III.**

Article III restricts federal courts to the adjudication of "cases or controversies." U.S. Const. art. III, § 2, cl. 1. "The standing inquiry ensures that a plaintiff has a sufficient personal stake in a dispute to ensure the existence of a live case or controversy which renders judicial resolution appropriate." Tandy v. City of Wichita, 380 F.3d 1277, 1283 (10th Cir. 2004). To establish Article III standing, Lot Maintenance must establish that (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of TMUA; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by the relief requested. See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 180-81 (2000); Tandy, 380 F.3d at 1283. The party seeking to invoke federal jurisdiction bears the burden of establishing all three elements of standing. Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992). If any one of these three elements — injury, causation, and redressability – is absent, then Lot Maintenance has no standing under Article III to assert its claim. Article III standing is determined as of time at which the Lot Maintenance's complaint was filed. See Nova Health Systems v. Gandy, 416 F.3d 1149, 1154-55 (10th Cir. 2005). Thus, the Court must determine whether, as of October 17, 2013, Lot Maintenance faced a concrete and actual or imminent injury in fact that was caused by TMUA and that is redressable by a favorable judicial order.

**A.      Lot Maintenance Has Suffered an Injury in Fact**

TMUA argues that, because the Project had not yet been awarded at the time the complaint was filed, Lot Maintenance had not yet suffered an injury and that, therefore, no case or controversy

exists. Dkt. # 13, at 1.[5]  TMUA also states that Lot Maintenance has not been disqualified from being awarded the contract.  Id.  Additionally, TMUA argues that the BRIDGE.DBE program "provides preferences for disadvantaged <u>subcontractors</u>" and that, because Lot Maintenance is a prime contractor, Lot Maintenance has not been denied equal treatment, and therefore lacks standing. Id. at 1.

Lot Maintenance argues that TMUA has violated its right to equal protection by creating a minority preference contract scheme that makes it more difficult for it to obtain a city contract. See Dkt. # 2, at 9-10.

> When the government erects a barrier that makes it more difficult for members of one group to obtain a benefit than it is for members of another group, a member of the former group seeking to challenge the barrier need not allege that he would have obtained the benefit but for the barrier in order to establish standing. The "injury in fact" in an equal protection case of this variety is the denial of equal treatment resulting from the imposition of the barrier, not the ultimate inability to obtain the benefit.

Ne. Fla. Chapter of the Associated Gen. Contractors of Am. v. City of Jacksonville, Fla., 508 U.S. 656, 666 (1993).[6]  A contractor challenging "a minority preference contract scheme on equal protection grounds need not show that it would have received a contract absent the city ordinance."

---

[5] After the filing of the complaint, TMUA rejected all bids for the Project and re-advertised the Project. Dkt. # 13-1, at 2. Those developments do not affect the standing analysis as "[s]tanding is determined as of the time the action is brought." Nova Health Systems, 416 F.3d at 1154-55.

[6] A party may seek both damages and injunctive relief based upon a barrier to entry. See Buchwald v. Univ. of N.M. Sch. of Med., 159 F.3d 487, 493 (10th Cir. 1998); see also Indep. Enters., Inc. v. Pittsburgh Water and Sewer Auth., 103 F.3d 1165, 1169, 1176 (3d Cir. 1997) (holding that where a utility authority has rejected all bids on a utility project, allegedly due to an unconstitutional minority preference scheme, and re-advertised the project, a plaintiff may seek "the award of the [contract] or damages and an injunction against future enforcement of the [minority preference scheme]"). However, a plaintiff is unable to recover damages if the governmental entity can prove that "it would have made the same decision without the impermissible motive." Texas v. Lesage, 528 U.S. 18, 21 (1999).

Concrete Works of Colo., Inc. v. City and Cnty. of Denver, 36 F.3d 1513, 1518 (10th Cir. 1994). Rather, it need only show that "it was 'able and ready to bid' on a contract subject to the ordinance" to establish an injury in fact; namely, the inability to compete with minority contractors on equal footing. Id. (quoting City of Jacksonville, 508 U.S. at 666).

In Concrete Works of Colo., the Tenth Circuit applied City of Jacksonville to a city ordinance that required bidders on a city contract to either satisfy a certified racial minority business enterprise and women-owned business enterprise (M/WBE) participation goal or make a good faith effort to do so. See 36 F.3d at 1516, 1518-19. However, Concrete Works of Colo. is distinguishable from the present case; the Denver ordinance explicitly states that a certified M/WBE bidder, by virtue of its certification, satisfies the M/WBE participation goal. Id. at 1516. The Tenth Circuit stated that this resulted in an unequal bidding process and that "the extra requirements impose costs and burdens on nonminority firms that preclude them from competing with MBEs and WBEs on an equal basis." Id. at 1518-19. The Tulsa ordinance does not explicitly state that a certified M/FBE bidder, by virtue of its certification, satisfies the M/FBE participation goal. See Tulsa, Okla., Rev. Ordinances tit. 5, § 110. The Tenth Circuit has not yet determined if the rule articulated in City of Jacksonville extends to minority preference contract schemes that do not explicitly state that M/FBE general contractors can satisfy the M/FBE participation goal by virtue of their certification.

The clear trend among other circuits is to extend City of Jacksonville to those schemes, albeit based upon differing rationales. See W.H. Scott Constr. Co. v. City of Jackson, Miss., 199 F.3d 206, 214-215 (5th Cir. 1999) (interpreting, and determining that it would be "nonsensical" to interpret it otherwise, a city's contract specifications as allowing a disadvantaged business enterprise (DBE) general contractor to fulfill the specification's DBE-participation goal "by keeping the requisite percentage of work for itself," despite a lack of explicit authorization in the text of the

specification); Safeco Ins. Co. of Am. v. City of White House, Tenn., 191 F.3d 675, 689 (6th Cir. 1999) (holding that a general contractor has standing when it is forced to discriminate against non-minority subcontractors, even if minority and non-minority general contractors face the same burden); Monterey Mech. Co. v. Wilson, 125 F.3d 702, 707-08 (9th Cir. 1997) (holding that "even if a general contractor suffers no discrimination itself," it is still has standing to challenge a requirement that it discriminate against others because it is required to take "odious" actions, because it exposes itself to liability for discrimination, and because it faces increased expenses and difficulties in performing the contract);[7] see also Lutheran Church-Mo. Synod v. FCC, 141 F.3d 344, 350 (D.C. Cir. 1998) (holding that "forced discrimination may itself be an injury" and that "[w]hen the law makes a litigant an involuntary participant in a discriminatory scheme, the litigant may attack that scheme by raising a third party's constitutional rights). But see Cone Corp. v. Hillsborough Cnty., 5 F.3d 1397, 1398 (11th Cir. 1993) (per curiam) (holding that a general contractor's challenge to an affirmative action plan failed to allege an injury because both minority and non-minority general contractors were required to seek the services of minority subcontractors).

---

[7] Plaintiff cites another Ninth Circuit case, Braunstein v. Ariz. Dep't of Transp., 683 F.3d 1177, 1185 (9th Cir. 2012), for the proposition that Lot Maintenance has not been "personally denied" equal treatment. Dkt. # 16, at 5. Braunstein is distinguishable from this case. It merely held that a subcontractor who failed to submit any quotes or bids to general contractors, failed to present any evidence "comparing himself with the other subcontractors in terms of price," and failed to present evidence "why the six prospective contractors rejected him as a subcontractor" was unable to establish that he had suffered a particularized injury. Braunstein, 683 F.3d at 1185-86. Lot Maintenance has alleged that it was a general contractor that submitted a bid to TMUA, that its bid was the lowest, and that its bid was deemed unresponsive for failing to comply with the BRIDGE.DBE program. Dkt. # 2, at 6-7. Additionally, the holding in Braunstein is completely compatible with the holding in Monterey Mechanical Co.. In fact, Braunstein restates the holding of Monterey Mechanical Co.. 683 F.3d at 1185 ("Similarly, in Monterey Mechanical Co. . . . we held that a general contractor had standing to challenge a state law requiring bidders on public contracts to show a 'good faith effort' to hire a certain percentage of minority- and women-owned subcontractors.").

8

Additionally, language in <u>Concrete Works of Colo., Inc. v. City and Cnty. of Denver</u>, 321 F.3d 950 (10th Cir. 2003), suggests that the Tenth Circuit would follow this approach:

> The City argues that [Concrete Works of Colorado, Inc.] lacks standing to challenge the 1998 Ordinance because all prime contractors must now meet identical requirements. We are satisfied that [Concrete Works of Colorado, Inc.] has standing because the record establishes that it has bid on subcontracting work for the City in the past and is "able and ready to bid" on subcontracting work subject to the 1998 Ordinance. Under the terms of the 1998 Ordinance, a prime contractor who cannot meet the percentage goals set out in the ordinance must provide the City with a statement of its good faith efforts. To satisfy its obligation, the prime contractor, *inter alia*, must verify that if it rejected an MBE or WBE it was because the M/WBE was not the lowest bidder or was not qualified. The 1998 Ordinance contains no analogous provision requiring a prime contractor to justify the failure to award a subcontract to a non-M/WBE subcontractor who submits the lowest bid.

321 F.3d 950, 954 n.1 (citation omitted). This Court follows that clear trend and holds that <u>City of Jacksonville</u> extends to minority preference contract schemes that do not explicitly state that M/FBE general contractors can satisfy the M/FBE participation goal by virtue of their certification.[8]

Lot Maintenance has alleged an injury in fact, namely that a minority preference contract scheme created a barrier to Lot Maintenance's bid on the Project being accepted. This alleged injury is separate and apart from any "ultimate inability to obtain" the Project. <u>City of Jacksonville</u>, 508 U.S. at 666. Lot Maintenance may seek relief based upon this injury. However, Lot Maintenance also seeks forward-looking relief.[9] See Dkt. # 2, at 10-11. Standing must be demonstrated seperately for each form of relief sought. <u>Friends of the Earth, Inc. v. Laidlaw Envt. Servs. (TOC)</u>,

---

[8] TMUA cites <u>M.K. Weeden Constr., Inc. v. Montana</u>, No. CV 13-49-H-CCL, 2013 WL 4774517 (D. Mont. Sept. 4, 2013), as persuasive authority. Dkt. # 16, at 3-5. However, <u>M.K. Weeden Constr., Inc.</u> does not address any of the arguments raised in <u>W.H. Scott Constr. Co.</u>, <u>Safeco Ins. Co. of Am.</u>, or <u>Monterey Mech. Co.</u>. See <u>M.K. Weeden Constr., Inc.</u>, 2013 WL 4774517, at *3. <u>M.K. Weeden Constr., Inc.</u> does not persuade this Court to abandon the clear trend among other circuits.

[9] Forward-looking relief refers to injunctions against future misconduct; it does not refer to prospective relief based upon past misconduct. See <u>Buchwald</u>, 159 F.3d at 493.

Inc., 528 U.S. 167, 185 (2000). When seeking forward-looking relief, a plaintiff must also establish that, in the near future, it will bid on another government contract that is also subject to the allegedly unconstitutional barrier. Cache Valley Electric Co. v. Utah Dep't of Transp., 149 F.3d 1119, 1122 (10th Cir. 1998). Lot Maintenance has not alleged that it will bid on another government contract in the relatively near future. See generally Dkt. # 2.[10] Therefore, Lot Maintenance may not seek forward-looking relief, and its complaint should be dismissed to the extent that it does so.

**B.  Lot Maintenance's Injury Is Fairly Traceable to the Challenged Ordinance and the BRIDGE.DBE Program**

TMUA argues that Lot Maintenance's alleged injury is not fairly traceable to the ordinance challenged by plaintiff. Dkt. # 16, at 5. TMUA argues that any injury suffered by Lot Maintenance was due to its failure to document its good-faith efforts to comply with BRIDGE.DBE, not due to any of the challenged portions of section 110. Id. at 6. Lot Maintenance's injury is fairly traceable to the challenged ordinance and to the BRIDGE.DBE program. As discussed supra, Lot Maintenance suffered its alleged injury when it became subject to a barrier that made it more difficult to receive a government contract than another group. That barrier was created by Tulsa, Okla., Rev. Ordinances tit. 5, § 110 and the BRIDGE.DBE program and, as such, Lot Maintenance's injury is fairly traceable to the challenged ordinance and program. See City of Jacksonville, 508 U.S. at 666 n.5.

Additionally, even if Lot Maintenance's injury was solely due to its failure to document, as TMUA contends, the documentation requirement is fairly traceable to the challenged ordinance and the BRIDGE.DBE program. The challenged ordinance requires that a contractor demonstrate that

---

[10]  Lot Maintenance does state that "[p]laintiff, and others, will continue to be denied contract awards." Dkt. # 2, at 10. However, without a representation that Lot Maintenance will bid on another contract subject to the minority preference scheme in the future, this is merely a conclusory allegation.

10

it "took all necessary and reasonable steps to achieve" the M/FBE goal. Tulsa, Okla., Rev. Ordinances tit. 5, § 110. The City of Tulsa, Oklahoma Utilization Instructions require documentation of a contractor's good faith effort to meet M/FBE goals. Dkt. # 19, at 16. The challenged ordinance and program created the burden on contractors of documenting their good faith efforts, so any injury resulting from a failure to satisfy that burden is fairly traceable to the ordinance and program.

**C.     Lot Maintenance's Injury Is Redressable**

TMUA argues that any injury to Lot Maintenance is not redressable. Dkt. # 16, at 6. Lot Maintenance's alleged injury is redressable via damages or injunctive relief. See Buchwald, 159 F.3d at 493; see also Indep. Enters., Inc., 103 F.3d at 1176 (holding that where a utility authority has rejected all bids on a utility project, allegedly due to an unconstitutional minority preference scheme, and re-advertised the project, a rejected contractor's injury is redressable via "the award of the [contract] or damages and an injunction against future enforcement of the [minority preference scheme]").

**D.     Prudential Considerations Do Not Weigh Against Exercising Jurisdiction**

TMUA argues that prudential considerations weigh against this Court exercising jurisdiction, because the case is not yet ripe. Dkt. # 16, at 8. It argues that both fitness and hardship considerations weigh against exercising jurisdiction. Id. at 9. It argues that any harm to Lot Maintenance is slight, as it may simply rebid on the Project. Id. Additionally, it argues that "[p]referential treatment of DBE subcontractors is a sensitive issue" and that further factual development during the rebidding process would benefit this case. Id.

The purpose of the ripeness doctrine "is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." Abbott Labs. v.

11

Gardner, 387 U.S. 136, 148 (1967), abrogated on other grounds by Califano v. Sanders, 430 U.S. 99 (1977). It requires the evaluation of "both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." Id. at 149. "In evaluating ripeness the central focus is on whether the case involves uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all." S. Utah Wilderness Alliance v. Palma, 707 F.3d 1143, 1158 (10th Cir. 2013) (quoting Initiative & Referendum Inst. v. Walker, 450 F.3d 1082, 1097 (10th Cir. 2006)) (internal quotation marks omitted).

The disagreement in this case is not abstract. Lot Maintenance has already been injured by the barrier created by the minority preference scheme. The imposition and application of the barrier has already occurred. TMUA has not suggested how further factual development would assist in determining whether the barrier was constitutional or whether Lot Maintenance's claim is otherwise meritless. Additionally, Lot Maintenance has requested injunctive relief preventing TMUA from awarding the Project to another bidder, reinstating Lot Maintenance's bid as responsive, and awarding the Project to Lot Maintenance. Dkt. # 2, at 11. Withholding a decision could cause hardship to Lot Maintenance, as TMUA could award the Project, or a portion of the Project, to another bidder, effectively preventing a court from awarding the relief requested by Lot Maintenance. As discussed infra, Lot Maintenance's injury cannot be remedied by simply submitting a new bid on the Project, because the rebid project is substantially smaller than the Project. This case is ripe and prudential considerations do not weigh against exercising jurisdiction.

### E.       Lot Maintenance's Claim Is Not Moot

TMUA has presented evidentiary materials suggesting that Lot Maintenance's claims may be moot.[11] TMUA has produced minutes from a meeting of the trustees of TMUA. See Dkt. # 13-1, at 1-2. Those minutes state that it was recommended that all bids on the Project be rejected and that the Project "be re-advertised for bids with the Contract Documents omitting the Bridge.DBE and M/FBE Certification Business Program requirements." Id. at 2. TMUA argues that by rebidding the Project, it is redressing any injury suffered by Lot Maintenance. Dkt. # 16, at 1. TMUA further argues that Lot Maintenance's claim will be fully redressed without causing additional injury to Lot Maintenance because "Lot Maintenance will not have to spend time or money contacting subcontractors to solicit bids," as Lot Maintenance does not use subcontractors. Dkt. # 16, at 2. TMUA argues that, to rebid, Lot Maintenance need only to "submit its previous bid with certain portions omitted," an injury so slight that it would not affect Lot Maintenance's substantial rights. Id. at 2-3. It argues that the possibility that Lot Maintenance "may" have to submit a lower bid is conjectural in nature and not an actual or imminent injury. Id. at 3.

Lot Maintenance has produced evidentiary materials suggesting that its claim is not moot. Dkt. # 19, at 8-14. The Project required a contractor to "clean approximately **1,000,000 linear feet and video inspect approximately 200,000 linear feet** of sanitary sewer main." Dkt. # 19, at 9

---

[11]   TMUA presented the evidentiary materials as part of its arguments that Lot Maintenance has not suffered an injury in fact, that any injury suffered by Lot Maintenance has already been redressed, and that prudential considerations weigh against exercising jurisdiction. See Dkt. # 13, at 2-3; Dkt. # 16, at 6, 9. However, the materials concern only events occurring November 6, 2013, while Lot Maintenance's complaint was filed October 17, 2013. Compare Dkt. # 13-1, at 1, with Dkt. # 2. Some of the evidentiary materials submitted by Lot Maintenance also concern only events postdating the filing of the complaint. Compare Dkt. # 19, at 1-2, 13-14, with Dkt. # 2. "Standing is determined as of the time the action is brought." Nova Health Systems v. Gandy, 416 F.3d 1149, 1154-55 (10th Cir. 2005). Therefore, events occurring after the complaint has been filed cannot impact standing. However, they may have bearing on whether Lot Maintenance's claim is now moot.

13

(emphasis in original). The rebid project required a contractor to clean only "approximately **650,000 linear feet and video inspect approximately 150,000 linear feet** of sanitary sewer main." Id. at 13 (emphasis in original). Payment for the Project and the rebid project was, and will be, based upon unit price. Id. at 10, 14.[12] Because the rebid project is substantially smaller than the Project-- and, presumably, worth substantially less--, TMUA did not moot Lot Maintenance's claims by rebidding the Project.

**F.      Lot Maintenance's Request to Amend Its Complaint**

Lot Maintenance requests in its response leave to file an amended complaint if this Court determines that its factual allegations are insufficient. Dkt. # 15, at 7 n.2. A response may not contain a motion or cross-motion. LCvR7.2(e). However, a judge may waive these local rules when the administration of justice so requires. LCvR1.2(c). Leave to amend should be freely given. Fed. R. Civ. P. 15(a)(2); see also Triplett v. Leflore Cnty., Okla., 712 F.2d 444, 446 (10th Cir. 1983). Accordingly, the Court waives LCvR7.2(e). Lot Maintenance's request for leave to amend will be granted.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss Based On the Lack of a Justiciable Controversy (Dkt. # 13) is **granted in part and denied in part**: it is granted to the extent Lot Maintenance seeks forward-looking relief; it is denied in all other respects.

---

[12]      Additionally, the Project originally allowed TMUA "to renew the contract four (4) times via one (1) year extensions," a term that was removed when the Project was rebid. Dkt. # 19, at 10, 14.

14

**IT IS FURTHER ORDERED** that Lot Maintenance's request for leave to amend its complaint (see Dkt. # 15, at 7 n.2) is **granted**. Lot Maintenance may file an amended complaint, insofar as it is not inconsistent with this opinion, no later than **May 12, 2014**. TMUA's responsive pleading to the amended complaint is due within 14 days of the filing of the amended complaint.

**DATED** this 28th day of April, 2014.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE